**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**ORLANDO PAPER CO., INC., Respondent.**

**No. 73–1197**

**Summary Calendar.***

United States Court of Appeals, Fifth Circuit.

July 5, 1973.

---

* Rule 18, 5 Cir.; *see* Isbell Enterprises, Inc. v. Citizens Casualty Company of New York, 5 Cir. 1970, 431 F.2d 409, Part I.

Elliott Moore, Acting Asst. Gen. Counsel, N. L. R. B., Washington, D. C., Harold A. Boire, Director Region 12, N. L. R. B., Tampa, Fla., for petitioner.

Norman F. Burke, Orlando, Fla., for respondent.

Before THORNBERRY, GOLDBERG and RONEY, Circuit Judges.

GOLDBERG, Circuit Judge:

In this case the National Labor Relations Board petitions the court to enforce a *Gissel*-type bargaining order against respondent, Orlando Paper Co., Inc. In the order the Board adopted the comprehensive decision of the Trial Examiner, which had found (1) that the Union, Teamsters Local No. 385, had achieved a valid card majority, (2) that the Company had engaged in extensive unfair labor practices that tended to undermine the Union's majority, and (3) that a bargaining order was the most appropriate means to remedy the Company's violations of the N.L.R.A.

The Company urges that enforcement of the order be denied for two reasons, both of which we find to be without merit. First, it argues that the Board erred in finding that the Company's unfair labor practices had a tendency to undermine the majority strength of the Union and that in fact the practices did not have that result. The Company argues that since the election process was not impeded, it was inappropriate for the Board to order recognition on the basis of a card majority. We reject the Company's argument on the facts.

The Trial Examiner found that the Company committed numerous unfair labor practices including, *inter alia:* threatening the employees with loss of existing benefits if the Union was chosen; promising new benefits for the purpose of discouraging union support; coercively suggesting the formation of an employee committee rather than joining the Teamsters; coercively interrogating individual employees concerning union membership; coercively soliciting employees to oppose union activity; instructing a supervisor to find a pretextual reason for discharging a union activist; and conditioning the hiring of new employees on their willingness to oppose the union. The Trial Examiner concluded:

". . . [T]he possibility of erasing the coercive effects of these unfair labor practices through traditional remedies, even if present, is so slight as to lead to the conclusion that, on balance, the employees' majority designation of the Union as expressed in their authorization cards provides in this case a more reliable measure of the employees' true desires than would be provided by an election."

The fact that support for the Union continued after some of the unfair labor practices had begun does not necessarily lead to the conclusion that the election process has not been impeded. *Cf.* Arbie Mineral Feed Co. v. N. L. R. B., 8 Cir. 1971, 438 F.2d 940. Here, the Trial Examiner considered this factor, but he found that despite much continued union support, including a strike, he could not conclude that an election would be untainted. While it is true that cards should only be relied upon where a fair election is unlikely, *see* N. L. R. B. v. American Cable Systems,

Inc., 5 Cir. 1970, 427 F.2d 446, and that a finding of tainted conditions by the Board will be carefully scrutinized, *see* N. L. R. B. v. General Stencils, 2 Cir. 1971, 438 F.2d 894, there is substantial evidence to support the Trial Examiner's finding in this case that a fair election could not be held. The unfair labor practices committed by the Company were considerably more egregious than those in many other cases where bargaining orders have been enforced, *e. g.*, N. L. R. B. v. WKRG-TV, 5 Cir. 1973, 470 F.2d 1302, and under the mandate of N. L. R. B. v. Gissel Packing Co., 1969, 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547, it is clear that the issuance of this bargaining order by the Board was well justified, both legally and factually.

 The Company's second contention is that the Board erred in not finding the Union's card majority tainted by the pro-union conduct of a supervisor, Freeman Harper. *See* N. L. R. B. v. American Cable Systems, Inc., 5 Cir. 1969, 414 F.2d 661, 664. Harper, who had recently been promoted from the status of a regular employee within the unit to the position of working foreman, attended the organizational meetings, was present when the Union was discussed favorably in small groups, and ultimately was one of seven employees (out of nine in the Company) who signed authorization cards. There is no evidence that Harper ever spoke out in support of the Union or actively encouraged anyone to sign a card. Harper was the last person to sign a card and his card was ultimately not counted because of his supervisory status. In N. L. R. B. v. WKRG-TV, *supra*, we refused to invalidate a card majority where two supervisors had been present at union meetings, had spoken favorably of the union, and had signed authorization cards prior to several of the unit members doing so. In *WKRG-TV* we held that the degree of supervisory participation fell short of the "actual solicitation or active campaigning" that is necessary if the card majority is to be considered tainted

by pro-union managerial intimidation. The supervisory participation by Harper, both subtle and overt, was less active than even the minimal amount that existed in *WKRG-TV*, and therefore, *a fortiori*, the participation by Harper did not taint the majority in this case.

Finding no error in the decision and order of the Board, the petition is granted and the order is enforced in its entirety.

Enforced.